**James T. GRIGSBY, Petitioner,**

v.

**James MABRY, Commissioner, Arkansas Department of Correction, Respondent.**

**Dewayne HULSEY, Petitioner,**

v.

**Willis SARGENT, Superintendent of the Cummins Unit Penitentiary, Grady, Arkansas, Respondent.**

**Ardia MCCREE, Petitioner,**

v.

**Vernon HOUSEWRIGHT, Director, Arkansas Department of Correction, Respondent.**

**Nos. PB–C–78–32, PB–C–81–2 and PB–C–80–429.**

United States District Court, E.D. Arkansas, Pine Bluff Division.

Aug. 18, 1983.

See also 689 F.2d 797.

William R. Wilson, Jr., Little Rock, Ark., for petitioner.

Victra Fewell, Deputy Atty. Gen., Little Rock, Ark., for respondent.

MEMORANDUM OPINION AND ORDER

EISELE, Chief Judge.

Pending before the Court is the Respondents' "Motion for Stay Pending Appeal."

The merits of the death qualification issues appear clear enough.[1] Before elabo-

---

1. The Court's decision of August 5, 1983, 569 F.Supp. 1273, holding that death qualified juries are less representative and more guilt-prone *than non-death qualified juries* does not reflect in any way upon the good faith and conscientiousness of jurors chosen to serve on death qualified juries or, indeed, suggest that conviction decisions actually rendered by such juries were necessarily wrong. As pointed out in that opinion, the effects noted operate consequentially only in the closer or more ambiguous cases. That a jury composed only of bank presidents might on a statistical basis be more likely to convict in a burglary case than a jury composed of a fair cross-section of the community is no reflection on the good faith or conscientious-

rate and exhaustive attention is given to one of the possible penalties, death, the focus should be upon fairly determining *if the defendant* in a capital case *is or is not guilty.*[2] If, but only if, he is found guilty may broad attention be turned to the selection of jurors who can, fairly to the state and the defendant, consider all penalties (including the penalty of death) prescribed by the State law. Such propositions appear, as a matter of constitutional law, almost self-evident.

The serious and difficult problem arises because of the *potential consequences* of the Court's ruling. The United States Supreme Court itself may have considered the potential wrenching consequences when it failed to adopt a *per se* rule in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, back in 1968. By its ruling in that case it invited further study. Although the results of such studies are in, and are overwhelming in the direction of their thrust and in their consistency, this Court now believes they were unnecessary. The Supreme Court should, it is respectfully suggested, have relied upon traditional legal analysis, rather than social science and empirical studies, in adopting a *per se* rule back in 1968 consistent with established constitutional principles. There is no good or convenient time to correct a broadly-followed unconstitutional practice. Fifteen years after *Witherspoon*, however,

the issues can no longer be avoided despite the turmoil which may result from the delay in coming to grips with those issues.

While, as stated, the merits appear clear to the Court, the State is correct in noting that no other court has yet held death qualification under *Witherspoon* standards unconstitutional. So very serious and fundamental issues will be presented to the appellate courts by virtue of the State's appeal. And, of course, the outcome cannot be predicted with any degree of assurance.

The remedy creates the larger problems. If the ruling could be applied only prospectively there would be few problems. But, because the death qualification procedure contaminates the fact-finding function of the jury charged with deciding the guilt-innocence of the defendants in capital cases, the obvious remedy according to traditional constitutional notions is a new trial. This is the remedy this Court, after long consideration and much hesitation, felt compelled to order. But the Eighth Circuit in its *Grigsby* decision made a point about the appropriate remedy that suggests its great concern also. Of course this Court has held in *Hulsey v. Sargent*, 550 F.Supp. 179 (E.D.Ark.1981), that the death qualification issues may not be considered unless raised before the trial in State court.[3] If its *Hul-*

---

ness of either such jury. Indeed the death qualification process reflects adversely and unfairly on only one group—*those excluded*—by implicitly suggesting that those who strongly oppose the death penalty do not believe that murderers should be convicted and punished. History (note Arkansas history as an example), judicial notice and the evidence in this case demonstrate the untruth and absurdity of such a proposition. It is a truism of the adversary system that the lawyers will, during the jury selection process, attempt to obtain a jury favorable to their client's interest. It is their duty to do so. Each, within broad limits, may use peremptory challenges in an attempt to obtain that objective. But the decision of August 5, 1983, states that no juror may be *systematically excluded by the Court* on the basis of a for-cause challenge when there is no "cause" or reason for doing so. The opinion reaffirms the *principle of inclusion* of all as jurors in capital cases who can fairly try the issues presented upon the basis of the law and the evidence.

2. This is not a radical or novel principle. The State of Arkansas itself operated under such a principle until at least the late 1950s. And it goes without saying that those non-death-qualified juries sentenced many defendants to death. So even if the State of Arkansas opted to try both the guilt phase and the penalty phase with the same non-death-qualified jury it is likely that in many cases it would, as before, succeed in getting such juries to impose the death penalty. But it may, under the Court's ruling, if it wishes, death qualify penalty-phase juries.

3. This Court has held that Mr. Hulsey failed to raise the issue and therefore cannot raise it now. Mr. Grigsby offered to make an evidentiary showing as suggested in *Witherspoon* that a death qualified jury would not be representative and also would be guilt prone in comparison with a non-death qualified jury. So Mr. Grigsby clearly raised the issue. Mr. McCree filed a motion in the Circuit Court of Ouachita County which states, *inter alia:*

*sey* ruling is upheld then that will greatly reduce the number of persons who may ask for a new trial on this ground. Still, it is likely that many defendants, particularly those tried in the last five years, may have challenged the death qualification procedures during their trials in state court. So, it is likely that many may be in a position to raise the issue. However, higher courts might, even if they affirm this court's rulings on the underlying issues,—a proposition which the State contends is most questionable—decide to give such rulings only a prospective effect. Such a decision would dramatically reduce the problems facing the states, leaving the relatively simple problem of adopting procedures which will permit the states in future trials to provide for the death qualification of those "penalty" juries which are asked by the State to impose the death penalty.[4]

Because of the great State interest in ascertaining what procedures will ultimately be required and because of the great number of potential habeas petitions which

could result from, or be affected by, the court's rulings, this Court will grant the State's petition for a stay pending appeal. The State is entitled to adequate time to obtain appellate review unhampered by the necessity of dealing with the problems incident to the possibility of new trials.

The Court's order does not deprive Mr. McCree of any legally compelling cognizable right to be released on bond pending his new trial. The Arkansas Constitution provides that all "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." Art. 2, § 8. It is clear that Mr. McCree's prior conviction for the capital offense would satisfy the state constitutional requirement that the "proof is evident" or that the "presumption is great." Furthermore, the relevant provisions of the Federal rules grant this Court the discretion to deny a petitioner his release pending an appeal of a decision granting his petition for a writ of habeas corpus. Rule 23(c) of

---

That said statute is unconstitutional in its application, and in violation of the Sixth Amendment to the United States Constitution, in that specifically in this case, death qualification was required of the prospective jurors and "death qualification" as imposed herein violates the defendant's right to a jury which represents a cross-section of the community, excluding those members of the community who are most likely to be merciful and leaves the defendant in the hands of a jury stripped of the group with humane inclinations, and is "prosecution prone", and is therefore not a fair and impartial jury.
T.Tr. 13
It will be noted that Mr. McCree did *not* make any offer to prove by evidence that death-qualified juries would not be representative or that they would be guilt prone. So it can be argued that Mr. McCree, too, like Mr. Hulsey, failed to properly raise the issue and, therefore, should be barred from raising it now. In other words, under *Witherspoon* itself death qualified juries were presumed to meet constitutional standards *absent an evidentiary showing to the contrary.* This Court has ruled that Mr. McCree did, in an adequate fashion, raise the issue. This conclusion is based upon the stipulation of the parties and upon this Court's further view that a *per se* rule should be adopted even in the absence of the evidentiary showing invited in *Witherspoon.* If this view is incorrect, i.e., if this Court's rulings are upheld only upon the basis of the

evidentiary proof that establishes that death qualified juries are factually unrepresentative and guilt-prone, then it might further be held that persons like Mr. McCree, who failed to at least make an offer of proof as invited by *Witherspoon,* did not properly tender the issue in their state court case and therefore are barred from raising it later.
Mr. McCree's right to raise the issues is clear. The State of Arkansas raised no *Wainwright v. Sykes* issue with respect to Mr. McCree's "Grigsby" claim. Indeed, Mr. McCree and the State stipulated that the resolution of Mr. Grigsby's claim would control Mr. McCree's death qualification challenge. The stipulation, entered into on July 14, 1981, provides that, subject to the right of appeal, "the parties to this action agree to be bound by the Court's decision in *Grigsby v. Mabry* with respect to the issue relating to the death qualification of his (McCree's) trial jury."

**4.** The Court expresses no opinion that the *present* statutory law of the State of Arkansas would have to be changed in order to have two completely separate juries, one for the trial of the defendant's guilt-innocence and the other for the penalty phase assuming a conviction were obtained. It is unclear how the State presently handles the situation where one or more of the jurors at the trial of defendant's guilt may die or otherwise be unavailable for the penalty phase.

the Federal Rules of Appellate Procedure provides that: "Pending review of a decision ordering the release of a prisoner in such a proceeding, the prisoner shall be enlarged upon his recognizance, with or without surety, unless the court ... shall otherwise order." For the reasons expressed in this memorandum, the Court in the exercise of its discretion is, consistent with Arkansas law, ordering "otherwise."

It is therefore ordered that respondents' "Motion for Stay Pending Appeal" be, and it is hereby, granted. Respondents are hereby ordered to retry or to free Mr. McCree within 90 days of the issuance of the mandate from the Eighth Circuit Court of Appeals on the State's appeal of this cause should this Court's decision be affirmed and the relief granted by this Court not be altered or modified by the Eighth Circuit.